[Civ. No. 236.    Third Appellate District.—August 4, 1906.]

## SARAH J. DuBRUTZ, Respondent, v. BANK OF VISALIA, Appellant.

LIFE INSURANCE—ASSIGNMENT OF POLICY AS SECURITY—NONPAYMENT OF PREMIUMS—PAID-UP POLICY—DISCHARGE OF DEBT.—Where a policy of life insurance provided for a paid-up policy in a less amount, in case of nonpayment of premiums, and it being payable to the wife, the husband and wife assigned to a bank, to secure the husband's debt thereto, ''said policy, and all our, and each of our, rights thereunder, and all benefits accrued or to accrue under and by virtue of the terms, or conditions thereof,'' such assignment carried with it the benefits to accrue under a paid-up policy, and gave

the bank power to apply for and receive the same, in case of non-payment of premiums; and the assignors were not injured by the credit by the bank of such policy upon the debt, leaving a residue which was charged to profit and loss, thus closing the account, without selling the pledged property.

Id.—Statutory Lien of Bank upon Policy.—Under section 3054 of the Civil Code, the bank, in addition to its assignment of the policy as security, had a statutory lien thereon, dependent upon possession of it as property belonging to a customer, for the balance due to it from such customer, in the course of the business.

Id.—Rights of Wife After Death of Husband—Redemption.—The wife having assigned all her rights in the policy to the bank, as security for an existing debt and future advances to her husband, she would have no right to the policy or its proceeds, after his death, until she had first tendered the debt due for which the policy was assigned.

Id.—Action for Proceeds of Policy—Claim That Debt is Barred by Statute.—In an action by the widow to recover from the bank the proceeds of the policy, under the claim that her husband's indebtedness to the bank was barred by the statute of limitations, even if it could be said that the two-year limitation in which to collect the debt was the proper period, the credit of the policy on the debt, which the bank was justified in making, appears to have been made before the lapse of two years from the accrual of the debt.

Id.—Promises Implied in Checks.—Everything implied in a writing is as much a part of it as though it were expressed therein; and in every check there are two implied promises: 1. That the money is in the bank with which to pay it; and 2. That if the money is not there, the drawer of the check will repay the money to the bank.

APPEAL from a judgment of the Superior Court of Tulare County.   W. B. Wallace, Judge.

The facts are stated in the opinion of the court.

Charles G. Lamberson, for Appellant.

Hannah & Miller, for Respondent.

BUCKLES, J.—This was an action by the widow to recover from the bank $2,840 which had been paid to the bank on a life insurance policy on the life of Edward R. DuBrutz. Judgment was for the plaintiff.   The appeal is from the judgment, and from an order denying defendant's motion for a new trial.   The policy was originally for $5,000, and

was made payable to Sarah J. DuBrutz upon the death of her husband, Edward R. DuBrutz. The husband was indebted to the Bank of Visalia, and to secure such indebtedness and future advances these spouses joined in assignment of the policy to said bank. This assignment was made December 21, 1898. On the thirteenth day of November, 1901, on failure of assured to pay the premiums this policy was by the company changed into a paid-up policy for $2,840, without the knowledge or consent of either husband or wife. The date of the last check drawn by DuBrutz on and paid by said bank was February 28, 1901, marked paid March 1, 1901, and his indebtedness to said bank at that date was $3,982.26. On August 14, 1902, the bank credited DuBrutz's account with the amount of the paid-up policy, to wit: $2,840.00. DuBrutz died May 17, 1904, and the bank thereupon collected the $2,840.00 from the life insurance company.

The contention of respondent is that the statute of limitations of two years had run in favor of DuBrutz in his account with that bank prior to the commencement of this action. The last item of the account was March 1, 1901, and the action was commenced on October 5, 1904. That the account in the bank being balanced on February 28, 1901, and a statement thereof rendered, the account became an account stated and the statute began to run from that date.

Appellant contends that DuBrutz's indebtedness to the bank was founded on written instruments, to wit, the checks he drew upon the bank and which the bank paid.

There is still another contention of plaintiff and that is that the paid-up policy was not the policy assigned. But we think this latter objection not well taken. In the written assignment, the assignors, DuBrutz and his wife say: "Do hereby assign said policy, and all our, and each of our, rights thereunder." One of their rights under said policy was to have a paid-up policy issued in lieu thereof. The written assignment continues: "and all benefits accrued or to accrue under and by virtue of the terms, covenants or conditions thereof, to the Bank of Visalia." This carried with it the assignment of the benefits to accrue under the paid-up policy as well as those under the original policy. Continuing further the assignment provides: "and hereby authorize said Bank of Visalia to receive, collect and receipt for any money or thing of value which is now or may become due by virtue

of said policy or the terms, covenants or conditions thereof, as fully and completely as we, or either of us, might or could do if this assignment had not been made.'' This assignment, couched in the terms it is, we think gave the bank power to apply for and receive a paid-up policy in lieu of the original. The policy was taken out December 7, 1886. Payments had been made up to November 5, 1901, and the premium then due was not paid. Premiums had therefore been paid for more than three years, and under the terms of the policy the life insurance company was bound to issue a paid-up policy. Under the assignment the bank might have paid the premium and kept the policy alive for the full amount of $5,000, but it chose not to do so. The paid-up policy for $2,840 is dated November 13, 1901, and presumably was issued on that day, but seems from the uncontradicted evidence of the cashier of the said bank that it was not received at the bank until August 14, 1902, and on that date the sum of $2,840, the amount named in said paid-up policy was placed to the credit of DuBrutz's account leaving a balance then due of $1,142.26, which balance was charged to profit and loss and the account closed. This paid-up policy represented a promise to pay a fixed, definite sum to become due and payable at the death of the insured, but the bank chose to treat it as so much money. At the most the plaintiff had a right to have paid to her any balance of the $2,840 which might exist at the death of her husband after paying his account in full at the bank, for the bank had a statutory lien on the policy in addition to the assignment for security. Section 3054: ''A banker has a general lien, dependent upon possession, upon all property in his hands belonging to a customer, for the balance due to him from such customer in the course of his business.''

But as has been seen the debt due the bank was much more than the policy, so that the plaintiff could not have been injured by the whole of the $2,840 being credited on the debt for which the assignment had been made. It is claimed also that this paid-up policy was the property of plaintiff and not subject to the payment of her husband's debts. Had she not assigned all her rights under it to the bank her contention would be correct. The policy being a security for the money owing when the assignment was made, and for future advances, plaintiff would have no right to said policy or its

proceeds until she had first tendered the debt due for which the policy was assigned. However, this seems not to have been made an issue in the case. Under the circumstances in this case, to wit, that the debt at the bank was very much larger than the policy, that the amount of the policy could never have increased and more than a year had passed since anything had been paid on the indebtedness to the bank, and the fact which occurred after the credit was given, that the husband dying on May 17, 1904, had not paid anything on said indebtedness, we think that the bank was justified in applying the policy as so much money on August 14, 1902, without attempting to make any sale of it as of pledged property. The debt was due, and to have put the policy up and sold it would have been an idle thing as it could not have brought more than its face value, the assured being still alive. Even could it be said that the two-year limitation in which to collect the debt was the proper period, the credit of the policy on the debt was made before the lapse of the two years. But we think the indebtedness was based upon instruments in writing, to wit, the check given by Edward R. Du-Brutz as follows: "Pay to the order of ————, $————. E. R. DuBrutz." A check on a bank, if the drawer have money deposited therein to be checked out, is a demand on such bank for the payment of a specific sum of money. If there be no funds on deposit then it is a request for credit and becomes an overdraft. A check is under our code (Civ. Code, sec. 3254) a bill of exchange and is negotiable. But whether it is a demand or a request it is always the written instrument on which the payment of a sum mentioned therein is founded, and is the foundation of any suit growing out of the payment of such money or a refusal to pay the check. The statute of limitations pleaded here provides that an action upon any contract, obligation or liability *founded* upon an instrument in writing executed in this state may be commenced within four years after the right of action accrues. (Code Civ. Proc., sec. 337.) There is in every check two implied promises: 1. That the money is in the bank with which to pay it; and 2. That if the money is not there the drawer of the check will repay the money to the bank. Everything implied in a writing is as much a part of it as though it were expressed therein. (*Bancroft* v. *San Francisco Tool Co.*, 120 Cal. 228, [52 Pac. 496].) As there is here a writ-

ten contract into which the law imparts a promise to repay, and this promise created by law, being an element of the contract, enters into and forms a part of this written check, and the statute of limitations governing written contracts to pay money is the only one that applies. (*Long* v. *Strous,* 107 Ind. 94, [57 Am. Rep. 87, 6 N. E. 123, 7 N. E. 763].) In an action to recover the money paid on an overdraft, the check or overdraft and not oral testimony would be relied upon as the proof. In *Meherin* v. *Saunders,* 131 Cal. 681, [63 Pac. 1084], one Ambrose bought property at a constable's sale, paid part cash and gave a check for the balance, but afterward had payment thereon stopped. The check was dated October 24, 1891. Suit was brought against Ambrose for the amount of the check on September 28, 1905, and the court said this was "less than a month prior to the date when an action on the check would have been barred by the statute of limitations."

The obligation of the maker of a note to reimburse his security for having paid the note is not founded upon the note, but upon the new promise made when the security pays the note (*Shipman* v. *Morrill & Webster,* 20 Cal. 131; *Thomas* v. *Pacific Beach Co.,* 115 Cal. 136, [46 Pac. 899]), and therefore the authorities presented on that point have no bearing on the question here.

Judgment reversed.

Chipman, P. J., and McLaughlin, J., concurred in the judgment.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 3, 1906, and the following opinion was then rendered thereon:

THE COURT.—In denying a transfer of this cause to the supreme court for hearing and decision, we desire to qualify the order by saying that we do not approve that portion of the decision of the district court of appeal which holds that an action by a bank to recover the amount of an overdraft is not barred by the statute of limitations short of four years. The case is not to be deemed a precedent upon that point.