[No. 7340.  Decided June 14, 1909.]

ADDIE K. SHERMAN, *Appellant*, v. MUTUAL LIFE INSURANCE
COMPANY OF NEW YORK, *Respondent*.[1]

INSURANCE—POLICY—STIPULATION FOR CANCELLATION—CONTRACT
FOR LOAN—PLEDGES.  A stipulation in a life insurance policy, pledged
as security for a loan, authorizing the company, upon a default, to
cancel the policy without notice, and apply the cash surrender con-
sideration to the payment of the loan, is valid; and where the loan
equals the cash surrender value, the insured's rights are terminated
by cancellation of the policy after default.

SAME—WAIVER—EXTENSION OF TIME.  In such a case, extension
of the loan for one year is not a waiver of the stipulation authoriz-
ing a cancellation, where the insured was not misled, and appears
to have treated his rights as terminated.

Appeal from a judgment of the superior court for Pierce
county, Reid, J., entered April 2, 1908, upon findings in
favor of the defendant, after a trial on the merits before the
court without a jury, in an action on a policy of life in-
surance.  Affirmed.

*Herbert N. DeWolfe*, for appellant.

*Hughes, McMicken, Dovell & Ramsey*, for respondent.

GOSE, J.—On the 13th day of April, 1900, the appellant
was the owner of a paid-up policy of insurance, for the sum
of $2,000, issued by the respondent upon the life of appel-
lant's husband, payable to the appellant, upon the death of
the insured, in ten annual installments.  This policy on the
date mentioned had a cash surrender value of $781.  On
that date the appellant, her husband, and their children, bor-
rowed the sum of $781 from the respondent, and agreed to
repay the same on September 19, 1900.  As security for the
payment of such loan, the appellant, her husband, and their

[1]Reported in 102 Pac. 419.

children, assigned the policy to the respondent. Among others, the assignment contained the following stipulation:

"In the event of default in the payment of said loan on the date hereinabove mentioned, the company is hereby authorized at its option without notice and without demand for payment, to cancel said policy and apply the customary cash surrender consideration then allowed by the company for the surrender for cancellation of similar policies, viz., $781, to the payment of said loan with interest, the balance if any to be payable to the parties entitled thereto, on demand."

Upon the maturity of the debt, by the agreement of the parties, the date of payment was extended to March 19, 1901, and the interest was paid to that date. Two interest payments were made, the first in the sum of $16.93, interest to September 19, 1900; the second, $19.53, interest to March 19, 1901. The first interest payment was deducted from the sum loaned. The second was paid as advance interest, in order to secure the extension of the date of payment to March 19, 1901. No other payments were made or tendered, either of interest or upon the principal. On May 2, 1901, the respondent cancelled the policy, claiming to act pursuant to the stipulation in the assignment. On June 11, 1904, the insured died, and on July 15, 1907, this action was instituted, charging that the respondent had wrongfully converted the policy. On June 23, 1904, the respondent, in answer to the appellant's inquiry of date June 16, 1904, as to the status of the policy, advised her that it had cancelled the same for nonpayment of the loan, on the 2d day of May, 1901. This was the first communication between the parties subsequent to the extension agreement of September, 1900. The case was tried to the court, and resulted in a judgment in favor of respondent. From such judgment, this appeal has been taken. Among other things the court found, "that on said 13th day of April, and said 2d day of May, 1901, the sum of $781 was the full cash surrender value of said policy."

The appellant urges that the judgment is erroneous upon four grounds; (1) that the forfeiture clause in the assignment is void; (2) that it was incumbent upon the respondent to give notice to the appellant of the amount due upon the loan at the date of its maturity, and that she had a reasonable time to redeem after receiving such notice; (3) that the extension of the date of payment from September 19, 1900, to March 19, 1901, operated as a waiver of the respondent's right to declare a forfeiture; (4) that the right having once been waived could not be revived.

The view we take of the case will dispense with the necessity of considering these propositions separately. We think the applicable principles of law are well settled. It is true, as the appellant urges, that the general rule is that a contract, whereby the pledged property becomes forfeited to the pledgee for the nonpayment of the debt at its maturity, is void on the ground of public policy. Denis, Contract of Pledge, § 302. The reason for the rule is that, in most instances, the disparity between the amount of the loan and the value of the security is so great as to make such a contract unconscionable. It is a rule proceeding from equitable principles and, like other equitable rules, where the reason ceases the principle fails of application. It is competent for the parties to the contract to stipulate that the pledgee may buy the securities at private sale at the market price, in case of default in payment of the debt, or that he may sell at public or private sale with or without notice, and that he may become the purchaser. Denis, Contract of Pledge, § 311; Edwards, Bailments, § 284; *In re Martens*, 144 Fed. 818; *Toplitz v. Bauer*, 161 N. Y. 325, 55 N. E. 1059; *Williams v. United States Trust Co.*, 133 N. Y. 660, 31 N. E. 29; *Manning v. Shriver*, 79 Md. 41, 28 Atl. 899.

In such case, the pledgee is treated as the trustee of the pledgor, and is held to the rule of good faith. Not only did the parties stipulate in the assignment that the cash surrender value of the policy was $781, but, at the time of the trial,

they further stipulated that such was its value at the time the loan was made, according to the books of the respondent. Indeed, it may be said that there is nothing in the record which rises to the dignity of evidence tending to show that, at such time or upon the date of its cancellation, it had any greater value. As we have seen, the rule that forbids the parties to stipulate for the forfeiture proceeds from equitable principles, to the end that the creditor may not make an unconscionable contract with one in necessitous circumstances. We have seen that an agreement which permits the creditor to take the security at the time of default at its market value has the sanction of law. In effect that is what the respondent did. The policy had no market value in excess of the surrender value. We must determine the rights of the parties from the ultimate result of what was done, rather than the form employed to accomplish the result. Measured by this rule, the acts of the respondent have the sanction of law.

In *Du Brutz v. Bank of Visalia*, 4 Cal. App. 201, 87 Pac. 467, 469, the insured and his beneficiary had assigned a policy drawn for $5,000, as collateral security. The assignee converted it into a paid-up policy drawn for $2,850, pursuant to one of its provisions, without the knowledge of the assignors, and applied it on the debt which the policy was pledged to secure. Under the assignment, the assignee might have paid the premium and kept the policy alive for the full amount of $5,000, but it chose to exchange it for a paid-up policy. At page 468, the court said:

"The debt was due, and to have put the policy up and sold it would have been an idle thing, as it could not have brought more than its face value, the assured being still alive."

See, also, *Palmer v. Mutual Life Ins. Co.*, 38 Misc. Rep. 318, 77 N. Y. Supp. 869.

We have seen that, for more than three years before the death of the insured, no payments were made on the loan, and

there was no inquiry concerning the policy. Again, the suit was not commenced for more than three years after the appellant had notice of the fact and the date of the cancellation. The facts and circumstances are more in consonance with the view that the appellant and her husband treated their rights as terminated, than that they regarded the obligation as a subsisting one against the company. The appellant and her husband could not ignore their obligation to pay the debt, and take shelter behind the proposition that without notice they had no means of knowing the amount due.

Finally, the appellant urges that the one extension of the date of payment was a waiver of the clause in the assignment. The authorities cited in support of the contention announce the familiar equitable principle that, where a party is misled to his disadvantage by the acts and conduct of another, the party misleading him will not be permitted to make a claim not in harmony with his acts. The failure of the appellant to redeem the policy before its cancellation did not result from any misconduct on the part of the respondent. She had the option to pay the debt and redeem the policy. Failing in this we cannot, under the facts and circumstances in this case, hold the respondent liable in damages.

The judgment will therefore be affirmed, and the respondent will recover its costs.

RUDKIN, C. J., FULLERTON, CROW, MOUNT, CHADWICK, MORRIS, and DUNBAR, JJ., concur.