[Civ. No. 598.   Third Appellate District.—September 29, 1909.]

## IDA F. H. FRESE, Appellant, v. THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Respondent.

LIFE INSURANCE—LOAN ON POLICY ASSIGNED AS SECURITY—NONPAYMENT—CANCELLATION—CLAIM OF ULTRA VIRES—ESTOPPEL.—Where a life insurance company loaned money to the insured secured by an assignment of the policy both by the insured and the beneficiary, under an agreement that upon default in its payment at maturity, the company may, at its option, without notice or demand of payment, cancel the policy, and apply its cash surrender value toward its payment with interest, and pay the residue to the person entitled, and the policy was so treated as canceled during the life of the insured, the beneficiary, in an action on the policy, is estopped by the loan agreement, and the consideration thereof, and the nonpayment of the loan, to urge that the act of the company in making the loan was *ultra vires.*

ID.—LOAN AGREEMENT EXECUTED PRIOR TO DEATH OF INSURED—ULTRA VIRES INAPPLICABLE.—Where the loan agreement was fully executed, as between all parties thereto, prior to the death of the insured, the claim of *ultra vires* cannot be set up.

ID.—LEGALITY OF LOAN OF SURPLUS FUNDS—ABSENCE OF PROHIBITION. A life insurance company may make a secured loan of its surplus funds, in the absence of an express prohibition thereof.

ID.—RIGHT GIVEN TO CANCEL POLICY NOT A FORFEITURE OF RIGHT OF REDEMPTION—CONSTRUCTION OF CIVIL CODE.—The right conferred by the agreement to enforce the debt after maturity by canceling the policy and applying its cash value to the debt when unpaid is not within the terms of section 2889 of the Civil Code, providing that "all contracts in restraint of the right of redemption are void." That provision only applies where there is a right of redemption, in case of sale, and it does not apply to any pledge of personal property. In case of a pledge of a private debt, there can be no sale, but only an enforcement thereof when due, under section 3066 of the Civil Code.

ID.—APPLYING CASH VALUE OF PAID-UP POLICY TO LOAN NOT INEQUITABLE.—It is not necessarily inequitable to agree to apply the cash value of a paid-up policy in payment of an unpaid loan thereon, where it appears that the cash value of the policy as fixed therein, at the time of default, exceeded the loan in the sum of less than $108, and that beyond such cash value the policy had only a speculative value, based on the uncertainty of the life of the insured, and payable at his death.

ID.—PROVISION FOR CANCELLATION NOT AN OFFER OR OPTION TO SELL POLICY.—The provision in the loan agreement that in the event of default the company "is hereby authorized at its option, without notice or demand for payment, to cancel the policy," cannot be construed as conferring merely an offer or option to sell the policy for the unpaid loan. Considering the manifest object and terms of the agreement, the word "option," as used therein, expresses no element of sale or option of a sale, but means that the company was authorized, in case of default of the pledgors, at its pleasure or upon its own motion, to apply the cash surrender value in payment of the loan.

ID.—BENEFICIARY NOT A SURETY BUT CODEBTOR.—The beneficiary cannot be considered a surety in uniting with the insured in the assignment of the policy, who was discharged by new agreements made with the insured without notice to her, where there is no evidence that she signed the agreement as surety, and there is evidence that the loan was made to both of them and that the money was paid to both.

ID.—RIGHT OF COMPANY TO APPLY CASH SURRENDER VALUE AS TO BOTH.—The company had the right under the joint assignment and loan agreement made by both the beneficiary and the insured to apply the cash surrender value as to both of them that it had as to either.

ID.—NOTICE TO INSURED ALONE NOT PREJUDICIAL TO BENEFICIARY.—Notice by the company to the insured alone of extensions of time at his request could not prejudice the beneficiary, as a codebtor; and notice to the husband alone that no further extension would be given, and that unless the debt were paid at the end of the last extension the policy would be canceled, cannot prejudice the beneficiary, as the company was not required to give notice of cancellation to either of them.

ID.—ESTOPPEL OF PLAINTIFF TO CLAIM SURETYSHIP.—Under section 2855 of the Civil Code, it is an exception to the right of the plaintiff to show himself to be a surety that he cannot claim suretyship against one who has acted on the faith of his being a principal.

ID.—OMISSION OF DEFENDANT TO ENFORCE DEBT WHEN FIRST DUE—RIGHTS AGAINST SURETY NOT WAIVED.—If it be conceded that the beneficiary was a surety for the insured, the defendant did not waive his rights as to the surety by omitting to enforce the debt against the insured when first due. Under section 2852 of the Civil Code, the rights of a surety are those of a guarantor, and under section 2923 of the Civil Code, "mere delay on the part of the creditor to proceed against the principal debtor does not exonerate a guarantor."

ID.—FINDINGS FOR DEFENDANT SUPPORTED—ABSENCE OF PREJUDICIAL ERROR IN EVIDENCE.—It is held that the findings for the defendant

are supported by sufficient evidence, and that there was no error prejudicial to plaintiff in the admission of evidence.

ID.—RECOVERY OF SMALL RESIDUE OF CASH VALUE OF POLICY—COSTS NOT ALLOWABLE TO EITHER PARTY—MODIFICATION OF JUDGMENT INCLUDING COSTS.—Upon plaintiff's recovery of the small residue of the cash value of the policy, left after payment of the loan, being of less than three hundred dollars, no costs were allowable to either party. A judgment establishing payment of the loan, including defendant's costs, will be modified by striking out the costs.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   E. P. Mogan, Judge.

The facts are stated in the opinion of the court.

A. E. Nathanson, and C. L. Brown, for Appellant.

Chickering & Gregory, for Respondent.

CHIPMAN, P. J.—Action to recover upon a life insurance policy. The complaint alleges: That about August 29, 1889, defendant issued to plaintiff a policy of insurance on the life of her husband, William Frese, agreeing thereby to pay to her $5,000 at his death; that the premiums due thereon were prior to his death fully paid; that on July 7, 1899, plaintiff's said husband borrowed from defendant the sum of $1,930 repayable to defendant on August 29, 1900; that defendant required as security for said loan the pledge of said policy, and plaintiff assented thereto, and thereupon plaintiff and her said husband entered into an agreement with defendant by which they assigned to defendant said policy and agreed therein to repay said sum to defendant on August 29, 1900, and as collateral security, and in consideration of the amount so loaned, did "assign, transfer and set over all their right, title and interest in and to said policy . . . together with all the moneys which may become payable under the same, to the company as collateral security for the payment of said loan with interest." The agreement further provided: "In the event of default of the payment of the said loan on the date herein above mentioned, the company is hereby authorized at its option, without notice and without demand for payment, to cancel said policy, and apply the customary cash surrendered consideration then allowed by

the company for the surrender for cancellation for similar policies, namely, $1,932.15 to the payment of the said loan with interest, the balance, if any, to be payable to the parties entitled thereto on demand."

Plaintiff further alleges that she did not know whether or not said indebtedness had ever been paid; or whether said policy had been canceled, "although the defendant now claims to have so canceled it"; on information she averred that defendant waived performance of said agreement touching payment of said indebtedness at maturity and its right to cancel said policy, and on September 4, 1900, "entered into a new agreement with said William Frese whereby in consideration of the payment by him for $96.50 in cash, which sum was then paid to the defendant, said loan was extended by defendant for one year from August 29, 1900"; and in like manner entered into "a fresh agreement with said William Frese, upon a like consideration of $96.50," extending payment of said indebtedness to August 29, 1902; that at said last-mentioned date and for a long time prior thereto said William Frese "was sick in body and mind and was mentally incompetent to attend to business," and that plaintiff was not aware that said indebtedness was not paid or that said policy had been canceled until after the death of her said husband (which occurred April 8, 1903), and not until when she made proof of death of her said husband; that she was furnished by plaintiff with blanks of proof of death on or about May 27, 1903, and made up and duly verified and filed the same with defendant, "and that no objection was made thereto, and no further or other proofs demanded"; that five months have elapsed since said proofs were made, and although payment has been demanded defendant has neglected and refused to pay the sum of $5,000, by said policy agreed to be paid to her by defendant.

Defendant by its answer admits the issuing of said policy and that it has not been paid; that all premiums thereon were paid by the assured prior to his death, and that he kept and performed all its terms "save and except as they referred to the payment of the loan hereinafter mentioned." Most of the other averments of the complaint are denied. As to the loan defendant alleges that it was made "to said William Frese and plaintiff jointly," and that "as collateral security

for said loan, said William Frese and Ida F. H. Frese, plaintiff herein, pledged to the defendant said policy of insurance and delivered to defendant the written instrument, copy of which is set out in the complaint, . . . and that no part of said loan has ever been paid to defendant, save and except by the application of the cash surrender value of said policy as hereinafter stated''; that the loan not being paid at maturity, to wit, August 29, 1900, ''at the request of said assured the term of payment of said loan was extended by defendant until August 29, 1901, and on said last named date the term of payment was again, at the request of the assured, extended by defendant to August 29, 1902. That no further extensions of the due date of said loan were ever made nor was the right of defendant to cancel said policy ever changed or altered, except as herein stated.'' Further answering, defendant avers that prior to the last date to which said loan had been extended, to wit, about August 6, 1902, defendant notified said assured that the said loan would be due and payable on August 29, 1902, and that if the same was not so paid, ''the company would cancel said policy and apply the cash surrender consideration thereof toward the payment of the said loan, with interest, as provided in said loan agreement''; that said loan was not then or ever paid, and no application was made to renew the same, ''and thereupon, to wit, on October 11, 1902, in accordance with said agreement, said policy was canceled by the defendant, and the cash surrender consideration thereof applied toward the payment of said loan and interest''; that the cash surrender value of said policy was $2,037.99, leaving a balance of $107.99 in excess of the amount of said loan and interest, which said balance defendant has ever since been and now is ready and willing to pay plaintiff; that on October 21, 1902, defendant advised said assured of the cancellation of said policy and of the facts last above stated, and then and there offered to pay said assured said balance ''upon the execution of a form of surrender receipt by plaintiff and said assured''; that thereafter said assured made application to defendant to restore said policy, but defendant refused ''on account of the condition of health of said assured, and the assured was so notified by defendant on November 18, 1902''; that subsequent to the death of said assured plaintiff made

demand upon defendant for the amount of said policy, but payment was refused "on the ground that said policy was not in force at the time of the death of said assured, and plaintiff was so notified by defendant"; that plaintiff was then notified that there remained a balance in cash of $107.99 due plaintiff as the difference between the cash surrender value of said policy and the amount due on said loan at the time of said cancellation; that a check for that amount and a blank form of receipt were sent to plaintiff and still remain in her possession; that "plaintiff requested defendant to furnish her the usual form of proofs of death of said assured and the same was so furnished to plaintiff"; but that she was then informed that said proofs were furnished "upon the distinct understanding that it was without waiver upon the part of defendant that said policy of insurance had been canceled during the lifetime of the insured, and was not in force at the time of his death, and said forms of proof of death were secured by said plaintiff upon such understanding, and not otherwise."

The cause was tried by the court without a jury, and plaintiff had judgment for $107.99. Plaintiff appeals from so much of the judgment as gave her but $107.99, and claims that it should have been for the full amount claimed "or at least for the sum of $2,998.17, with interest thereon from May 27, 1903"; and appeals also from that part of the judgment awarding costs to defendant. The appeal comes up on a bill of exceptions.

It is not necessary to set out the findings specifically—suffice it to say that the averments of the answer are found to be true in all material particulars.

In certain respects the findings are challenged as unsupported by the evidence. It is claimed that the evidence was insufficient to show that the policy was canceled by defendant and also to show that its cash surrender value was as alleged by defendant. The evidence consisted in considerable part of letters between the officers and agents of the company and by them to the assured and plaintiff; also of office records and abbreviated notations on the policy which were explained. It is suggested by plaintiff that these mention the "surrender" of the policy and not its "cancellation." But the surrender spoken of was explained to have been made

under the loan agreement, and it was further shown that the surrender of the policy was in effect its cancellation. It sufficiently appeared that so far as the company could do so it canceled the policy and so treated it. Whether it had a right so to do is a question of law rather than of fact. The evidence was also sufficient to show that the cash surrender value of the policy at the date of its cancellation was as claimed by defendant and as credited on the loan. The finding "nor was the right of said defendant to cancel said policy ever changed or altered except in reference to said due date," is challenged as unsupported by evidence. This refers to the extension of time of payment of the loan as shown above. It is claimed that as these extensions were made at the request of the insured as alleged in the answer and shown by the evidence, and not by plaintiff, and as the notice given was to William Frese that the loan would be due August 29, 1902, and was not given to plaintiff, she is not bound by what took place between her husband and the company of which she had no notice. Passing for the moment the legal effect of these extensions as affecting plaintiff's rights, it will be observed that the loan agreement expressly authorized the company, on default of payment of the loan, "without notice and without demand for payment, to cancel said policy and apply the customary cash surrender consideration . . . to the payment of the said loan."

The alleged errors in admitting evidence over plaintiff's objection may here be disposed of. They are five in number, to wit: (a), relating to the admission of the letter of the defendant's agent to plaintiff's husband informing him that the company had canceled the policy; (b), his reply thereto; (c), the company's reply to this letter; (d), the second letter of William Frese to the company; (e), the company's letter to plaintiff declining to pay the policy. There is nothing in any of these letters in the slightest degree harmful to plaintiff. There are no admissions or declarations of plaintiff's husband affecting the rights of plaintiff; they had some tendency to show that her husband was not mentally deranged.

The real questions presented by the appeal are questions of law, and upon these plaintiff's position is: 1. That the loan agreement is *ultra vires;* 2. That the right given by the agreement to cancel the policy is a provision for the forfeiture of

property subject to a lien and is in restraint of the right of redemption from a lien, and therefore void; 3. That if not void as a provision for forfeiture, it is merely an option or offer by plaintiff to sell the insurance policy within a reasonable time after August 29, 1900; 4. That plaintiff pledged her policy as a surety for money borrowed by William Frese and she was exonerated by the new agreement of August 29, 1900, whereby William Frese was given an extension of one year.

It should be stated that the loan was made to plaintiff and her husband, both joining in the execution of the agreement to repay the sum loaned and assigning the policy as collateral security; the money was paid to them by the company's check to the order of both; there was evidence that William Frese was sound of mind during all the transactions between him and the company, and although not in good health, the company, so far as appears, was not aware of his condition until he applied for a restoration of the policy after its cancellation, and upon the report of the company's medical examiner.

1. Was the agreement *ultra vires?* The argument of appellant is that under the act of March 28, 1874 (Stats. 1873-74, p. 777), defendant was authorized "to loan upon mortgages of real estate"; that the agreement of 1899 was prior to the enactment of section 421, subdivision 7, of the Civil Code which permits insurance corporations to loan money on their own policies, and hence there was no authority for making the loan agreement. The contention is that by the act of 1874 there was an implied prohibition to loan upon property other than real estate. Respondent, it seems to us, makes conclusive answer to this contention: That by the terms of the agreement and as alleged in the complaint, "plaintiff consented to the pledge, and did pledge, the said policy of insurance to defendant as security for said loan"; that plaintiff and the assured received consideration for the loan agreement and have not offered to repay it and are estopped from setting up the act of the corporation as *ultra vires.* (*Grangers' Assn.* v. *Clark*, 67 Cal. 634, [8 Pac. 445]; *Camp* v. *Land*, 122 Cal. 167, [54 Pac. 839]; *Bay City Building & Loan Assn.* v. *Broad*, 136 Cal. 525, [69 Pac. 225].) That the loan agreement was, prior to the death of the assured, fully exe-

cuted by both parties, and in such a case *ultra vires* cannot be set up. (28 Am. & Eng. Ency. of Law, p. 50.) That the contract of a corporation is legal if not expressly prohibited, and it may loan its surplus funds in the absence of such prohibition. (*Colorado Co.* v. *American Co.,* 97 Fed. 843; Civ. Code, sec. 354, subd. 8.)

2. It is contended that the loan agreement provides for the forfeiture of property the subject of a lien, and is void as in violation of section 2889, Civil Code, which reads: "All contracts for the forfeiture of property subject to a lien or satisfaction of the obligation secured thereby, and all contracts in restraint of the right of redemption from a lien are void." It is claimed that this section is declaratory of the equitable doctrine that property given as security cannot be taken in satisfaction of the obligation secured thereby, and that any provision in the instrument of security that undertakes to provide for such forfeiture or for restraint of the right of redemption is void. (Citing *Bradbury* v. *Davenport,* 114 Cal. 593, 599, [55 Am. St. Rep. 92, 46 Pac. 1062]; *Lowe* v. *Ozmun,* 3 Cal. App. 387, [86 Pac. 729].) It was sought in the early cases by virtue of this section of the Civil Code to have the court declare void a conveyance of the mortgaged premises by the mortgagor to the mortgagee. But it was held that where the sale is fair and free from undue influence, oppression or fraud and for an adequate price, it is not restrained by section 2889, Civil Code. (*Phelan* v. *De Martini,* 85 Cal. 365, [24 Pac. 725].) The case of *Bradbury* v. *Davenport,* cited by appellant, was one involving the mortgage of real estate, where the mortgagor was, by unfair advantage taken of his physical condition and financial embarrassment, induced to place a deed of the mortgaged premises to the mortgagee, in escrow, under an agreement to deliver the same to the mortgagee upon payment by him of a certain sum of money, and the holder of the escrow was authorized to discharge the mortgage and return the note secured thereby to the mortgagor. It was clearly a case of an attempt to secure unfairly a waiver of the equity of redemption by the mortgagor. In *Lowe* v. *Ozmun,* 3 Cal. App. 386, [86 Pac. 729], cited by appellant, the action was for the conversion of certain bonds of a gas company and a railway company. Embodied in the collateral note was an agreement as to the

manner of selling the bonds on default of the pledgor, either by private or public sale. The pledgee assumed to purchase the bonds himself at private sale. Speaking of this the court said: "The term 'private sale' comprehends something more than the mere taking over of the property by the pledgee at such price as he may elect to consider an offer. This is in effect but a declaration of forfeiture, an agreement for which is invalid under section 2889, Civil Code." Conceding that the first part of this section applies to cases of forfeiture of all kinds of property, the latter part of the section refers only to cases where there is a right of redemption—such as mortgages of real estate. Here there was no right of redemption, for the code expressly provides that a pledgee may sell property without right of redemption and the manner of sale may be agreed to and the notice waived by the pledgor. (Civ. Code, sec. 3000 et seq.; *Williams* v. *Hahn,* 113 Cal. 475, [45 Pac. 815].) True, section 3011 furnishes a further means by which the pledgee may obtain money from his security, and the section provides that "instead of selling property pledged, as hereinbefore provided, a pledgee may foreclose the right of redemption by a judicial sale," but this section by no means can be said to endow pledgors of personal property with a right of redemption as is the case of a mortgage of real estate. (*Farmers & Merchants' Bank* v. *Copsey,* 134 Cal. 287, [66 Pac. 324].) Section 3006 of the Civil Code provides: "A pledgee cannot sell any evidence of debt pledged to him except the obligations of governments, states and corporations, but he may collect the same when due." Under the agreement—"and to give effect to the contract, if possible, is our duty"—(*Lowe* v. *Ozmun,* 3 Cal. App. 387, [86 Pac. 729]), the defendant proceeded strictly within its terms, and in effect collected the obligation pledged to it and applied the proceeds to the debt, or, in pursuance of the contract, applied to the debt the cash surrender value of the policy, and to do this without notice to the pledgors was within its rights. (*Du Brutz* v. *Bank of Visalia,* 4 Cal. App. 201, [87 Cal. 467, 469].) It cannot be claimed as necessarily inequitable to apply the cash surrender value of a five thousand dollar paid-up policy in payment of indebtedness amounting to no more than the amount here involved. It was applied at its full cash value and had no other except

a speculative one based upon the uncertainty of the life of the assured, and would be payable only at his death. There was no attempt made to show that it had any greater value than given it by defendant; indeed, the agreement itself fixed its then value at $1,932.15, and defendant applied the cash value as it stood when the policy was canceled.

3. We do not think appellant's third proposition is tenable, namely, that if the provision relating to the cancellation of the policy was not a provision for a forfeiture, then it was merely an offer or option to sell the policy for $1,932.15 within a reasonable time after August 29, 1900. Appellant's contention is derived from the provision of the agreement that the company "is hereby authorized, at its option, without notice and without demand for payment, to cancel said policy." The object of the agreement plainly manifest by its terms, and as shown by the complaint itself, precludes the construction thus given by appellant. The transaction was a loan pure and simple, secured by a pledge of the policy. The agreement of the company was "to loan the parties of the second part the sum of $1,930"; it provided that "the receipt of the foregoing amount as a loan is hereby acknowledged upon the pledge hereinafter set forth of policy No. 371,257," and "in consideration of the amount of said loan the parties of the second part hereby assign . . . said policy as collateral security for the payment of said loan." There is no element of a sale, or option of a sale to be found in the agreement. It would be a perversion of the English language to call this an offer or option of plaintiff and her husband to *sell* the policy for a certain sum. The term "option" as used in the agreement means that the company was authorized, on default of the pledgors, at its pleasure or upon its own motion, to apply the cash surrender value in payment of the loan.

4. Neither is the proposition of appellant maintainable, that plaintiff pledged her policy as surety for the money borrowed by her husband, and hence she and her property were exonerated by the new agreement of August 29, 1900, between her husband and the company. There is no evidence in the record that plaintiff signed the agreement as a surety. The evidence is that the loan was to her and her husband; the agreement was signed by both and the money was paid to both. The company was not informed as to what use the

money was to be put or by whom; both plaintiff and her husband were, by the terms of the agreement, principals and both were debtors, and if any other relation existed, it was not shown. The company had the same right to apply the cash surrender value to the loan as to both that it had to either. That the company gave notice to the husband and not to plaintiff was not prejudicial to plaintiff, for it was under no obligation to give notice to either. Neither was there any waiver by defendant of plaintiff's rights because it failed to collect the loan when originally due. Deferring the exercise of its right to cancel the policy by delaying to enforce the agreement ought not to be regarded as a waiver of defendant's rights, for it was a benefit rather than a detriment to plaintiff. The code provides (Civ. Code, sec. 2832) that one who appears to be a principal may show that he is in fact a surety, "except as against persons who have acted on the faith of his apparent character of principal." A surety has all the rights of a guarantor (Civ. Code, sec. 2844), and conceding, what does not appear, that plaintiff was a surety, we do not find that she has been deprived of any right given her as such by the code. "Mere delay on the part of a creditor to proceed against the principal, or to enforce any other remedy does not exonerate a guarantor." (Civ. Code, sec. 2823.)

Since the argument of the cause our attention has been called to the very recent case of *Sherman* v. *Mutual Life Ins. Co.* (Wash.), 102 Pac. 419. In that case the same company was defendant as here, and the same form of agreement was entered into between the parties under like circumstances. It was there held that the contract was valid; that the stipulation as to cancellation is not waived by an extension of the date of payment of the loan; that no notice of intention to cancel the policy was necessary; and that the company had the right, upon default in payment of the loan, to cancel the policy.

5. Defendant had judgment for costs. The allowance of costs is a matter of statutory regulation. Plaintiff is entitled to costs, of course, "in an action for recovery of money damages, when plaintiff recovers three hundred dollars or over." (Code Civ. Proc., sec. 1022, subd. 3.) "But no costs can be allowed in an action for the recovery of money or dam-

ages, where the plaintiff recovers less than three hundred dollars.'' (Code Civ. Proc., sec. 1025.) It was held in *Anthony* v. *Grand,* 101 Cal. 235, [35 Pac. 859], "This [referring to section 1025] evidently applies to both parties to the action and forbids the recovery of costs by either of them.''

The judgment is modified by striking out that part thereof which provides that "defendant have and recover of and from Ida F. H. Frese, plaintiff, its costs incurred herein,'' and as thus modified the judgment is affirmed.

Burnett, J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 26, 1909.