HARTFORD LIFE INS. CO. et al. v. BENSON.   (No. 5592.) *

(Court of Civil Appeals of Texas. Austin. March 22, 1916. Rehearing Denied June 7, 1916.)

INSURANCE ⊙=179½—POLICY LOAN AGREEMENT—VALIDITY.

In a paid-up life policy loan note, an agreement by insured and beneficiary that on nonpayment of the note the amount of paid-up insurance guaranteed in the policy should be reduced in the same proportion as the indebtedness bore to the cash surrender value is reasonable and valid and in harmony with the policy indicated by Rev. St. 1911, art. 4741, requiring policies to stipulate that "the failure to repay any such advance or to pay interest shall not void the policy until the total indebtedness thereon to the company shall equal or exceed the loan value," although not providing for a sale of the policy pledged for nonpayment of the note, since there can be no general market for life insurance policies outside of relatives and creditors.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. ⊙=179½.]

Error from District Court, Tom Green County; J. W. Timmins, Judge.

Action by Mrs. Ora Benson against the Hartford Life Insurance Company and another. Judgment for plaintiff, and defendants bring error. Reversed and rendered in part, and in part reformed and affirmed.

Plaintiffs in error's brief contains the following correct statement of the nature and result of this suit, and the facts relied on for a reversal:

"This suit was brought by Mrs. Ora Benson to recover from the Hartford Life Insurance Company and the Missouri State Life Insurance Company on a policy for $2,000 issued by the first-mentioned company on the life of her husband. The plaintiff sought judgment for the face of the policy, less the amount of a loan. It was alleged that Missouri State Life Insurance Company had reinsured the business of the other company, and had assumed all of its obligations; hence judgment was asked against it also.

"The defendants denied liability for any greater sum than $50, for which sum they admitted liability, and pleaded a tender thereof prior to the institution of suit. About 3½ years before the death of the insured the company made a loan on said policy of $788. The plaintiff and the insured made written application for such loan, and the same was evidenced by a loan note executed by the plaintiff and the insured. At the time of securing said loan all premuims due under the policy had been paid, and it had become a paid-up policy for its face amount, payable on the death of the insured, though several of the last premiums had been paid with the proceeds of loans under said policy. A provision of the loan note stipulated that, should any installment of interest thereon remain unpaid for 30 days, the amount of paid-up insurance guaranteed in the policy should be reduced in the same proportion as the indebtedness bore to the cash surrender value thereof, and that the company should not thereafter be liable on the policy, except for the amount of paid-up insurance so reduced. The interest installment due July 6, 1911, not having been paid upon that date, nor within 30 days thereafter, the defendant company satisfied the note in pursuance of the terms of the loan agreement, allowing, however, a greater cash surrender value than was required under the policy, indorsed said policy as a paid-up policy for $50 in pursuance of the agreement, and duly notified the insured of its action. The insured made no complaint, and died on December 30, 1912, 14 months thereafter.

"The plaintiff contended that the rights of the parties were to be determined just as if the stipulation in the loan agreement did not exist, and as if the company had not taken the action indicated. The case was tried before the court without a jury, on an agreed statement of facts, and resulted in a judgment in favor of the plaintiff for the face of the policy, less the amount of the note and interest thercon, and together with statutory attorney's fees and penalties. The court filed findings of fact and conclusions of law. The defendants duly filed a motion for new trial, and, the same having been overruled, they sued out this writ of error for the revision and correction of the judgment.

"The policy in suit was a 10-payment life policy; that is to say, a policy requiring the payment of premiums for 10 years and payable on the death of the insured. The policy was issued July 6, 1900, and became paid up by the payment of the tenth premium in July, 1909. Thereafter, under date of July 30, 1909, the insured and plaintiff applied to defendant Hartford Life Insurance Company for a loan of $788 on the policy, the same being the entire loan value promised in the policy, the application for the loan in part reading as follows: 'I do hereby apply for a loan of $788 to be made upon said policy, subject to the conditions of the loan note executed by me this day, and do hereby agree that said loan shall be and continue a lien upon said policy and on the money that may become due thereon until said loan and interest thereon shall be fully paid.' Upon the same date the plaintiff and the insured, in exchange for the amount of the loan, executed and delivered to the company their loan note or agreement as follows:

" '$788.00.                  Policy No. 258,186.

" 'On demand, for value received, I promise to pay to the Hartford Life Insurance Company, of Hartford, Conn., seven hundred eighty-eight dollars, with interest at the rate of 5 per cent. per annum, payable annually in advance (interest up to July 6, 1910, to be deducted from the amount received hereon), and I hereby acknowledge the amount of this note, with any interest that may accrue thereon, to be an indebtedness to said Hartford Life Insurance Company on account of policy No. 258,186, issued by said company on the life of Thomas H. Benson, which policy, with all right, title, and interest therein, and all benefit and advantage to be derived therefrom, is hereby assigned to and deposited with said company as security. I further agree that, if this note remains unpaid 30 days after payment is demanded, or if any interest payment on said note shall remain unpaid 30 days after it becomes due, or if any premium shall become due and remain unpaid for 30 days, the amount of paid-up insurance guaranteed in said policy shall be reduced in the same proportion as the said indebtedness bears to the cash surrender hereof

(which cash surrender value shall equal the loan value of the preceding policy year), and the company shall not thereafter be liable on said policy except for the amount of paid-up insurance so reduced, notwithstanding any of the provisions of said policy, and said indebtedness shall then be considered canceled.

" 'All payments, whether of principle or interest, shall be made by the borrower at the home office of the company in Hartford, Conn., or to an agent whose authority for receiving the same shall be the possession of the note or a receipt signed by an executive officer of said company.

" 'Dated at Crowell, Tex., this 30th day of July, 1909.

" 'Insured, Thomas H. Benson.
" 'Beneficiary, Ora Benson.'
" 'Witness, Ben Henderson.
" 'Witness, J. R. Beverly.'

"As already stated, the loan was for the entire loan value promised in the policy, and the cash surrender value under the foregoing agreement therefore exactly equaled the loan at all the dates in question.

"The installment of interest due July 6, 1910, on said loan was duly paid by the insured, but the interest installment due July 6, 1911, to wit, $39.40 was not then or thereafter paid by the insured, or by any one for him. A receipt for such interest installment was sent by the company to the First State Bank of Crowell, Tex., for collection, and was presented by said bank to the insured, but he did not pay the same, notwithstanding he received and accepted a check from the company for $4.38 for a dividend declared by it on the policy for the preceding year. Upon the return to the company of the dishonored interest receipt, the company proceeded to act in accordance with the provisions of the loan note, and stamped the policy 'Paid-up insurance for $50,' and advised the insured by registered letter, which he duly received, that it had so indorsed the policy, and that said amount of paid-up insurance constituted the sole liability of the company on the policy. The insured made no complaint, and died a little more than 14 months afterwards, on December 30, 1912. Some 10 months after his death proofs of death were furnished to the company, and claim made on it for the amount of the policy. The company thereupon forwarded its check for $50 to the plaintiff, which she refused to accept, and the company shortly thereafter, and before the present suit was filed, tendered to her in legal tender money of the United States said sum of $50, which tender was rejected. The company has retained ever since the identical legal tender money used on such occasion, holding the same subject to the order of the plaintiff, and in its pleadings has repeated its offer and tender of the same to the plaintiff. Thereafter on April 24, 1914, the present suit was begun.

"The company's indorsement of said policy for $50 of paid-up insurance was due to its allowance of $808 as a cash surrender value of said policy, being $20 more than the amount promised in the policy, and $20 more than the amount of the loan. The company allowed this additional sum, because it was enabled by its experience to do so, and because customarily, as in this case, it allowed its policy holders the maximum values which their policies had, according to its experience. But for the allowance of this additional sum the entire value of the policy would have been consumed in the satisfaction of the loan.

"The policy of insurance contains a schedule of loan values, available to the insured from year to year, such value being $788 at the end of the ninth policy year, to wit, on July 6, 1909, and being also $788 at the end of the tenth policy year, to wit, July 6, 1910. Under the policy the insured also had the privilege of surrendering the policy at the end of the tenth year, to wit, July 6, 1910, for the cash value thereof, which was stated to be the same amount as the loan value at the end of the tenth year, to wit, $788.

"As has been indicated in the general statement under this assignment of error, the policy at the time of default had a value in the experience of the company of $808, being $20 more than that promised in the policy, and accordingly the company, in indorsing the policy for paid-up insurance under the terms of the loan note, allowed the greater sum, as was its custom. At said time the value of the policy according to the American Experience Table of Mortality, and interest at 4½ per cent., was $793.70, being less than the value allowed by the company.

"Article 3050 of the Revised Statutes of 1895, in force when the policy was issued, relating to the duties of the commissioner of insurance, provides as follows: 'He shall, as soon as practicable in each year, calculate or cause to be calculated, in his office, by an officer or employé of his department, the net value on the 31st day of December of the previous year, of all the policies in force on that day in each life or health company doing business in the state. Calculations of the net value of each policy shall be based upon the American Experience Table of Mortality and four and one-half per cent. interest per annum. And the net value of a policy at any time shall be taken to be the net single premium which will at that time effect the insurance, less the value at that time of the future net premiums called for by the table of mortality and rate of interest designated above.'

"While the foregoing statute was repealed by the Insurance Code of 1909 (page 192) and substitute provisions enacted therefor, the Texas standard for the valuation of life insurance policies issued at the time in question remains the same. R. S. 1911, articles 4758, 4751, 4493, 4498."

Locke & Locke, of Dallas, for plaintiffs in error. Hill, Lee & Hill, of San Angelo, and O. F. Wencker and E. S. Hamilton, both of Dallas, for defendant in error.

KEY, C. J. (after stating the facts as above). The controlling question involved in the appeal is the validity of the agreement between the insurance company, on the one side, and the insured and beneficiary named in the policy, on the other side, embodied in the loan note, by which it was stipulated that, if the note should remain unpaid 30 days after maturity and demand, or if any interest payment remained unpaid 30 days after maturity, etc., the amount of paid-up insurance guaranteed in the policy should be reduced in the same proportion as the indebtedness bore to the cash surrender value, and stipulating that the company should not thereafter be liable on the policy, except for the amount of paid-up insurance so reduced, etc. Counsel for plaintiffs in error make the contention that the contract referred to does not violate any written law or any rule of public policy of this state; that it provides a reasonable, fair, and just method of settlement in the event of a breach of the contract embodied in the loan note, and therefore it is binding upon Mrs. Benson, the defendant in error, who signed the contract.

Counsel for defendant in error present two counter propositions in support of the judgment of the trial court, which are: (1) That the insurance company had no right to can-

cel the policy because of a note which provided that upon a failure of the insured to pay interest on the note the policy could be canceled by the company so as to deprive the beneficiary of the proceeds of the policy, less the debt and interest due thereon; and (2) that the acts of the company in declaring the policy canceled and issuing a small amount of paid-up insurance without any proceeding to foreclose their pledge was not sufficient to deprive the beneficiary of paid-up insurance as originally provided in the policy, less what might be due under the pledge.

While it seems to have been held otherwise by the Supreme Court of Kentucky, and perhaps a few other courts, we think the weight of authority, based upon sounder reason, supports the contention urged in behalf of the insurance company, as is shown by some of the following authorities cited in the brief of their counsel: Sherman v. Mut. Life Ins. Co., 53 Wash. 523, 102 Pac. 419; Hayes v. N. Y. Life Ins. Co., 68 Misc. Rep. 558, 124 N. Y. Supp. 792; affirmed Id., 150 App. Div. 927, 135 N. Y. Supp. 1116; Palmer v. Mut. Life Ins. Co., 114 Minn. 1, 130 N. W. 250, Ann. Cas. 1912B, 957; Wilson v. Royal Union Life Ins. Co., 137 Iowa, 184, 114 N. W. 1051; Palmer v. Mut. Life Ins. Co., 38 Misc. Rep. 318, 77 N. Y. Supp. 869; Eagle v. N. Y. Life Ins. Co., 48 Ind. App. 284, 91 N. E. 814; Frese v. Mut. Life Ins. Co., 11 Cal. App. 387, 105 Pac. 265; Rye v. N. Y. Life Ins. Co., 88 Neb. 707, 130 N. W. 434; Cilek v. N. Y. Life Ins. Co., 95 Neb. 274, 145 N. W. 693; Salig v. U. S. Life Ins. Co., 236 Pa. 460, 84 Atl. 826.

It is a well-settled rule of law relating to pledges that the agreement may authorize the pledgee to sell the property, either at public or private sale, and with or without notice to the pledgor, and the pledgee may himself become the purchaser at the sale, the proceeds to be applied to the liquidation of the debt, and the balance held in trust for the pledgor. Of course, the sale must be fairly made and for a fair price, but the power to sell exists, and by the sale the pledgor is deprived of all interest in the property. It is true that the contract in this case did not provide for the sale of the policy, which was pledged for the security of the debt, but it does not follow that it was unreasonable or unjust or illegal for that reason, as will be shown hereafter. The contract here involved not only does not violate any constitutional or statutory law, nor contravene any rule of public policy, but is in harmony with the policy impliedly sanctioned by article 4741 of Revised Statutes 1911, which article, in part, reads as follows:

"It shall further be stipulated in the policy that failure to repay any such advance, or to pay interest, shall not void the policy until the total indebtedness thereon to the company shall equal or exceed the loan value."

To say the least of it, that provision of the statute impliedly recognizes the right of insurance companies to make and enforce contracts similar to the one involved in this case, and therefore it is clear that such contracts do not violate any rule of public policy; and the fact that the Legislature enacted that statute is some indication that the lawmaking department of the government did not regard contracts impliedly sanctioned therein as invalid or unreasonable.

Recurring to the question of the reasonableness of such contracts as the one here involved, attention is called to the fact that in this state there can be no general market for life insurance policies, such as exists for stocks, bonds, and other obligations to pay money. This results from the fact that no one except relatives and creditors can become a beneficiary in a life insurance policy. This rule applies to an assignee, as was held in Cheeves v. Anders, 87 Tex. 287, 28 S. W. 274, 47 Am. St. Rep. 107; and therefore, if such a policy were offered for sale, a vast majority of the public would be prohibited from purchasing, and those eligible to purchase would be so few that practically no market for such property would exist. And for that reason, if the contract or the law should require the property to be disposed of by sale, as is generally the case as to other pledges, the result in most instances would be that the insurance company would be the only bidder, and could buy in the policy upon terms much more injurious to the insured and beneficiary than has resulted in this case.

Of the authorities hereinbefore cited in Palmer v. Mut. Life Ins. Co., 114 Minn. 1, 130 N. W. 250, Sherman v. Mut. Life Ins. Co., 53 Wash. 523, 102 Pac. 419, Eagle v. N. Y. Life Ins. Co., 48 Ind. App. 284, 91 N. E. 814, and Palmer v. Mut. Life Ins. Co., 38 Misc. Rep. 318, 77 N. Y. Supp. 869, contracts similar to the one now under consideration were involved and held to be valid, and we copy the following excerpts from two of those cases:

In Palmer v. Mutual Life Insurance Co., 114 Minn. 1, 130 N. W. 250, the Supreme Court of Minnesota said:

"The rule requiring the sale of the property cannot well be made applicable to a life insurance policy, pledged to the company issuing it as security for the payment of a loan; for, whether fully paid or not, it has no marketable sale value, and an attempt to thus dispose of it would be futile. So that some method of enforcement, other than a sale, or unconditional relinquishment of ownership by the pledgor, must be resorted to. A careful consideration of the subject leads to the conclusion that the remedy by cancellation at the cash surrender value of the policy is not inconsistent with sound public policy or violative of the substantial rights of the pledgor. On the contrary, it is a reasonable and practicable method of bringing the contract to a final termination."

In Sherman v. Mut. Life Ins. Co., 53 Wash. 523, 102 Pac. 419, the Supreme Court of Washington dealt with the question as follows:

"We think the applicable principles of law are well settled. It is true, as the appellant

urges, that the general rule is that a contract, whereby the pledged property becomes forfeited to the pledgee for the nonpayment of a debt at its maturity is void on the ground of public policy. Denis, Contracts of Pledge, § 302. The reason for the rule is that in most instances the disparity between the amount of the loan and the value of the security is so great as to make such a contract unconscionable. It is a rule proceeding from equitable principles, and, like other equitable rules, where the reason ceases, the principle fails of application. It is competent for the parties to the contract to stipulate that the pledgee may buy the securities at private sale at the market price, in case of default in payment of the debt, or that he may sell at public or private sale with or without notice, and that he may become the purchaser. [Citations omitted.] In such case the pledgee is treated as the trustee of the pledgor, and is held to the rule of good faith. Not only did the parties stipulate in the assignment that the cash surrender value of the policy was $781, but at the time of the trial they further stipulated that such was its value at the time the loan was made, according to the books of the respondent. Indeed, it may be said that there is nothing in the record which rises to the dignity of evidence tending to show that at such time, or upon the date of its cancellation, it had any greater value. As we have seen, the rule that forbids the parties to stipulate for the forfeiture proceeds from equitable principles, to the end that the creditor may not make an unconscionable contract with one in necessitous circumstances. We have seen that an agreement which permits the creditor to take the security at the time of default at its market value has the sanction of law. In effect, that is what the respondent did. The policy had no market value in excess of the surrender value. We must determine the rights of the parties from the ultimate result of what was done, rather than the form employed to accomplish the result. Measured by this rule, the acts of the respondent have the sanction of law."

In our opinion, the two cases last mentioned are in line with both reason and the weight of authority, and therefore we hold that the present case should have been decided in accordance with plaintiff in errors' contention.

For the reasons stated, the judgment of the trial court is in part reversed and rendered for plaintiffs in error, and is reformed so as to permit the plaintiff in the court below, Mrs. Ora Benson, to recover of the defendants in the court below, the Hartford Life Insurance Company and the Missouri State Life Insurance Company, the sum of $50, and no more; and, inasmuch as the insurance companies conceded their liability for $50, and tendered that sum before the suit was brought, all the costs of both courts will be taxed against Mrs. Benson.

Reversed and rendered in part, and in part reformed and affirmed.