(38 Misc. Rep. 318.)

### PALMER v. MUTUAL LIFE INS. CO. OF NEW YORK.

(Supreme Court, Special Term, New York County. June, 1902.)

1. LIFE INSURANCE—ASSIGNMENT AS PLEDGE.

    A life insurance policy is a nonnegotiable chose in action, subject to the rules applicable to that class of property, and under an assignment thereof as security for debt the legal title passes to the assignee, and the only interest remaining in the assignor is what remains of the policy after the advances have been satisfied.

2. SAME—RIGHTS OF PLEDGEE.

    Where a life policy is pledged for debt, and the debt is not paid at maturity, the pledgee may dispose of a policy in the manner agreed upon, thereby cutting off the right to redeem.

3. SAME—REDEMPTION—REINSTATEMENT OF POLICY.

    An owner of a paid-up life insurance policy borrowed certain moneys on it from an insurance company, and three months after its cancellation and settlement with the company sued for redemption and reinstatement of the policy on payment of the loan. The company set up as a separate defense that the plaintiff borrowed certain moneys on an ordi-

---

¶ 1. See Insurance, vol. 28, Cent. Dig. §§ 492, 1481.

nary policy to be applied on the premiums, the balance to be paid in cash to the assured, giving the company also authority on default to cancel the policy and apply its surrender value to the debt; that default was made in the interest, and plaintiff exchanged the policy for the paid-up one in suit under an agreement that it should run another year; and that, plaintiff having failed to pay this latter debt, the company extinguished the policy and paid the plaintiff the balance after settlement of the debt in cash. *Held* to state a good defense.

Action by John W. Palmer against the Mutual Life Insurance Company. Demurrer to defense in answer alleging new matter overruled.

H. Wollman, for plaintiff.

E. L. Shortt, for defendant.

FITZGERALD, J. This is a demurrer by the plaintiff to a defense in the answer alleging new matter. The action is brought for the redemption, restoration, and reinstatement of a paid-up policy of insurance upon the life of the plaintiff in the defendant company upon payment to the latter by the former of such amount as the court should find due and owing to the defendant company by reason of its loan to the plaintiff upon his pledge of said policy. The facts, as disclosed by the pleadings, are as follows: The plaintiff, on March 24, 1899, was the owner of a life insurance policy for $5,000 in the defendant company. On that day the defendant agreed to loan and did loan to the plaintiff upon his pledge of said policy the sum of $530, the purposes and items of which were: To pay premiums to March 11, 1900, $194; interest at 5 per cent. (plus interest on said premiums), $25.89; balance by defendant's check, $310.11. In consideration thereof the plaintiff then delivered and assigned his said life policy to the defendant as collateral security for the repayment of the amount of said loan on March 11, 1900, and authorized the defendant, on default in said repayment without notice or demand for payment, to cancel said policy, and apply the customary and agreed cash surrender value of said policy, $538, to the payment of said loan, with interest, the balance to be paid to the plaintiff or his representatives. The interest, but not the principal, of said loan was paid when due. The plaintiff then exchanged his said life policy for a paid-up policy in the defendant company for $2,000. On March 20, 1900, the parties made an agreement with reference to the latter policy, identical in its terms with that above described concerning the former policy, except that the amount of the loan was not apportioned among premiums, interest, and cash, that the date of payment became March 13, 1901, and that the cash surrender value of the policy was agreed to be $558. It is difficult to determine from the pleadings the form and order of the transactions of the parties at the time of, and with reference to, the maturity and nonpayment of the first loan, the surrender of the old and the issuance of the new policy, the making of the new loan, and the pledge of the new policy therefor. As far as is discernible it seems that the original loan was, after the issuance of the paid-up policy in exchange for the life policy, renewed or exchanged in consideration of the payment of interest on the original loan and the pledging of the paid-up policy. Although notified of its maturity and of the defendant's intention to cancel the

policy for nonpayment of the loan, the plaintiff did not pay the debt when due, and the defendant, in accordance with the agreement, canceled the policy, retained the amount of its debt, and paid the plaintiff the balance of the cash surrender value thereof. The plaintiff then alleges that three months after he was ready and willing to pay the amount of the loan and interest that he so notified the defendant, and that he demanded the return, reinstatement, and restoration of his paid-up policy. The defendant then refused and now refuses to receive payment of said loan and interest, and to reinstate or restore said policy, and sets up as a second and separate defense to the plaintiff's action the above facts concerning the loans, the pledges therefor, nonpayment thereof at maturity, cancellation of the policy in accordance with the written agreement of the parties, application of the cash surrender value to the payment of the indebtedness, and return of the balance to the plaintiff. It is to this separate defense that the plaintiff demurs. The plaintiff contends that the said agreement between the parties, and the acts done thereunder, are insufficient as a defense to this action, because equity will regard the assignment of the policy as security for the loan as a defeasible transfer, will treat the borrowing plaintiff as incapable of making a contract with reference to his equity of redemption in the property at the time he pledges the same, will hold such an agreement as null and void, and will allow the borrower to redeem after the maturity of his obligation, notwithstanding any agreement he may have made to the contrary at the time of the pledge.

Without questioning the accuracy of the plaintiff's statement of the law defining the rights of the debtor with respect to the property pledged or mortgaged by him, it does not seem to me, however, that, under the circumstances of this case, the equitable right of redemption, which is said to be inseparably attached to every pledge or mortgage, and of which a borrower is incapable, in the instrument of pledge or mortgage, of parting with, can here and now permit him to redeem, or secure the restoration or reinstatement of his policy, upon payment of the debt and interest, as a pledgor or mortgagor is ordinarily permitted to do. The agreement of the parties, containing the assignment of the policy as collateral security, did not expressly provide that the legal right, title, and interest in and to the policy should vest in the assignee subject to defeasance upon the payment of the debt for which it was assigned as security, nor did it expressly state that, as in the case of the ordinary pledge, the legal title should remain in the assignor and that the assignee should have only a special interest therein. A policy of insurance is, however, a nonnegotiable chose in action, subject to the legal rules applicable to that class of property. Under an assignment thereof as security for a debt the legal title passes to the assignee; the only interest remaining to the assignor is what remains of the policy after the advances have been satisfied; the assignee may recover the whole amount of the policy from the insurer, but he acquires only such an interest in the proceeds of the policy as may be necessary to discharge the indebtedness and represent the advances made by him. Schackelford v. Mitchill, 16 Daly, 268, 10 N. Y. Supp. 122; Gilman

v. Curtis, 66 Cal. 116, 4 Pac. 1094. And, as in the case of any pledge, the assignee or pledgee has the right, upon a default in payment at maturity of the debt for which the property is held as security, to dispose of or realize upon the pledge, that he may thereby obtain the amount of his debt; and his character is that of a trustee for the pledgor, for these purposes, first to pay the debt, and second to pay over the surplus. In accordance with these legal rules, as above briefly stated, the parties expressly provided that, upon default in payment of the debt at maturity, the policy pledged as security therefor should be disposed of, and its value should be ascertained according to adopted and "customary" standards, and should be agreed upon as thus determined, and the proceeds should be applied to the payment of the indebtedness, the balance to be turned over to the pledgor. The debt became due and was unpaid at maturity. The defendant was under no obligation, and probably possessed no power to maintain the policy until its maturity by the payment of premiums thereon. On the other hand, it then had the right, both in law and by its express agreement with the plaintiff, to secure the payment of its debt by disposing of or realizing upon the pledge of the policy in the form and manner prescribed. Owing to the peculiar nature of that property it could not make a sale thereof for these purposes, and it was therefore necessary to dispose of the policy in some way and to determine in some way its value as of the time of the default. Instead of, as in the case of an ordinary pledge, leaving the value to be determined by a sale by the pledgee as trustee for the pledgor, the parties agreed that the value of the pledged policy should be its customary cash surrender value, and agreed upon that value in advance, and the defendant secured the same for the benefit of itself as a creditor and of the plaintiff as pledgor by the cancellation of the policy in accordance with the agreement and with the practice of companies such as the defendant. The defendant has done no more than the law permits the ordinary creditor with whom property is pledged to do, and no more than the parties agreed that it should have the right to do. The property pledged as security for the defendant is not now owned, held, or possessed by the defendant; it is no longer in existence; in accordance with law and with the agreement of the parties, it has been disposed of in the only manner possible and as agreed upon by the borrower and lender. Upon this disposition its value was determined, not arbitrarily, not by any advantage taken of the lender by the borrower, but according to a prescribed, adopted, uniform standard, and the amount thereof has been divided among the parties, the plaintiff receiving, accepting, and retaining his share of the proceeds. The defendant company has, with reference to the property pledged with it as security, acted entirely within its rights, as defined in the case of Toplitz v. Bauer, 161 N. Y. 325, 55 N. E. 1059, in which the court says that "the pledgee doubtless has the right to exact a strict performance of the contract according to its terms, and upon default in payment of the debt at the time stipulated he may, under a contract like this, dispose of the pledge." In the case of Bailey v. Loan Co., 52 App. Div. 404, 65 N. Y. Supp. 330, it is held that there can be no doubt that, upon the failure of the

obligors to pay to a pledgee the amount due, the latter was authorized to surrender the pledged policy to the assurance society and receive the surrender value thereof without notice of any kind to the obligors. If the plaintiff, after the disposition of the property pledged by him in accordance with his express agreement, and after his receipt, acceptance, and retention of the balance due him, could now be permitted to redeem, he might, upon the same principle, justly claim to be allowed to redeem years after or immediately before his death, upon the mere tender of the amount of the debt, interest, and costs,—a practice which has been judicially declared to be unjust, inconsistent with, and detrimental to the interests or business of life insurance companies. There can be no question under the authorities, that a paid-up policy is subject to forfeiture if it contains a provision that the failure to pay premiums and premium notes and interest thereon should work a forfeiture, and that such a provision is not unconscionable, oppressive, and usurious. Attorney General v. Insurance Co., 82 N. Y. 172; People v. Knickerbocker Life Ins. Co., 103 N. Y. 480, 9 N. E. 35; Fowler v. Insurance Co., 116 N. Y. 395, 22 N. E. 576, 5 L. R. A. 805. It is true that all of the above are cases in which there was a forfeiture under a clause of a policy of insurance providing for such forfeiture upon the nonpayment of premiums or premium notes or interest due on the original policy; and here there is no indication of any such clause in the policy, and the issuance of the paid-up policy is claimed to be a recognition by the defendant that all premiums had been paid. Such a rule, however, has been judicially applied to cases where provision for the forfeiture of the paid-up policy for nonpayment of the premium notes or the interest thereon has been expressed, not in the policy itself, but in a memorandum made on the policy, or in a note given for the premium. 19 Am. & Eng. Enc. Law (2d Ed.) 46. It may, perhaps, be properly contended that, apart from the terms of the policy itself, which are not set forth in the pleadings herein, a provision for the cancellation and forfeiture of the same should be made in an agreement executed contemporaneously with the policy itself between the insurer and insured for the assignment of the policy to secure the payment of an indebtedness of the latter to the former, one of the largest items of which consists of unpaid premiums upon the original policy. As has been stated above, however, it is difficult to determine from the pleadings in this case the form, order, or effect of the transactions of the parties herein. The first agreement evidently indicates that the entire amount of $530 was loaned by the defendant to the plaintiff, but whether the defendant actually paid that sum to the plaintiff, who then repaid $194 thereof for premiums, or whether the company charged the amount of said premiums and interest thereon to plaintiff and gave him cash for the balance of the loan, does not, as a matter of fact, appear. It is evident from the terms of the first agreement that one of its purposes was to secure the payment of premiums upon the original policy up to March 11, 1900, for it is recited that of the item of $530 loaned by the company to the plaintiff $194 was to pay said premiums. It is true that the new agreement did not apportion the total indebtedness to any item for pre-

·miums, but, notwithstanding that fact, it does appear that the debt for which the paid-up policy was pledged· as security was not paid by the plaintiff at maturity, and that it included an item thereof for premiums and interest upon the original policy, for which the paid-up policy was exchanged. In view of that fact, and of the uncertainty, from the mere pleadings, of the nature and effect of the transactions of the parties, and under the authorities, it would seem, apart from the reasons first stated herein, a more proper course to leave a determination of the rights and liabilities of the parties to the trial of the action, when the policies themselves and all of the facts which are not disclosed by the pleadings may be shown. For the reasons first above stated, and because of the latter consideration, the demurrer should be overruled, with costs.

Demurrer overruled, with costs.