### HARRIMAN NAT. BANK v. HUIET et al.

(Circuit Court of Appeals, Fourth Circuit. November 16, 1917.)

No. 1548.

1. EXEMPTIONS ⏝50(1)—LIFE INSURANCE—CONSTRUCTION OF STATUTE.

Civ. Code S. C. 1912, § 2721, provides that life insurance payable to a married woman, or to her and her children, shall be exempt from the claims of creditors of her husband, with a proviso that, if the premium paid in any one year from funds of the husband shall exceed $500, the exemption shall not apply to so much of said premium as shall be in excess of $500, but such excess, with interest, "shall inure to the benefit of such creditors." *Held*, that under such statute, construed in connection with section 3455, which makes every conveyance with intent to hinder, delay, or defraud creditors void as to creditors affected thereby, all premiums paid by a husband in excess of $500 in any one year are recoverable, with interest, by his creditors in case he dies insolvent, without regard to his solvency or insolvency at the time of their payment; but the insurance purchased with premiums up to $500 per year belongs exclusively to the wife, and cannot be taken to pay such claims of creditors.

2. EXEMPTIONS ⏝102—LIFE INSURANCE—FRAUD OF INSURER.

That a husband obtained money by fraudulent representations with which to pay premiums on life insurance policies payable to his wife does not render the proceeds of such policies subject to the claims of his creditors, where they are exempted by statute and the wife was not a party to the fraud.

3. EXEMPTIONS ⏝104—ASSIGNMENT OF LIFE INSURANCE POLICIES—RIGHTS OF BENEFICIARY.

A wife, who is beneficiary in life insurance policies procured by her husband, does not lose her interest therein by permitting their assignment as security to a creditor of her husband, and their reassignment to her by the creditor is not a diversion of assets by the husband in fraud of his creditors.

4. EXEMPTIONS ⏝50(1)—LIFE INSURANCE—PREMIUMS PAID BY BENEFICIARY.

Where a husband deposited bonds to secure payment of a premium on a life insurance policy payable to his wife, and after his death the wife redeemed the bonds and turned them over to his estate, she was equitably entitled to the amount of the premium paid for their redemption, although, if it had been paid by the husband, it would have been subject to his debts.

Knapp, Circuit Judge, dissenting in part.

Cross-Appeals from the District Court of the United States for the Eastern District of South Carolina, at Charleston; Henry A. M. Smith, Judge.

Suit in equity by the Harriman National Bank against Lucy C. Huiet, Katharine R. Huiet, the Franklin Sugar Refining Company, the Southeastern Life Insurance Company, and the Dime Savings Bank and George H. Moffett, administrators d. b. n. of Caleb B. Huiet, deceased. From the decree, complainant appeals, and defendant Lucy C. Huiet files cross-appeal. Modified and affirmed.

For opinion below, see 244 Fed. 216.

⏝For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Augustine T. Smythe, of Charleston (Henry Buist and George L. Buist, both of Charleston, S. C., on the brief), for Harriman Nat. Bank and administrators d. b. n. of Caleb B. Huiet.

Walter B. Wilbur, of Charleston, S. C. (Alfred Huger, of Charleston, S. C., on the brief), for Lucy C. Huiet, Katharine R. Huiet, and Franklin Sugar Refining Co.

J. P. K. Bryan, of Charleston, S. C., for Lucy C. Huiet.

Before PRITCHARD and KNAPP, Circuit Judges, and CONNOR, District Judge.

PRITCHARD, Circuit Judge. This is a suit in equity instituted in the District Court of the United States for the Eastern District of South Carolina by the Harriman National Bank, of the city of New York, to subject certain life insurance policies on the life of Caleb B. Huiet, an insolvent decedent, to the payment of certain debts.

It appears that the decedent was a merchandise broker in the city of Charleston, S. C., carrying on a large business there and in other markets; that he became insolvent prior to the 31st day of March, 1914, and on that day made a statement in writing of his financial condition to the Harriman National Bank, of New York, for the purpose of securing a loan. It is insisted that this statement, which purported to have been taken from his books of accounts, was not taken from the same, that the figures given at that time showing him to be a man of wealth were entirely false, and that he thereby practiced a fraud against the Harriman National Bank. It is further insisted that the Harriman National Bank, by virtue of such fraudulent statement, loaned to Caleb B. Huiet the sum of $30,000, without security, in two loans of $15,000 each. It appears that the notes representing these two loans were each renewed once. However, no payments of any kind were made upon the renewal notes, and they are still due and owing.

It further appears that at the time of this transaction decedent was investing heavily in life insurance, payable to his wife; his life insurance policies at the time of his death, April 8, 1916, amounting to $215,000 face value. It is insisted that at that time his assets were practically nothing. Lucy C. Huiet, the widow of the decedent and principal beneficiary of the policies, and Katharine R. Huiet, a daughter, were made parties respondent to the suit; also the Franklin Sugar Refining Company, which it is alleged was more or less involved in Huiet's financial affairs, and the Southeastern Life Insurance Company, which had not at that time paid two of the policies, were made joint respondents. It appears that these two policies have since been paid into the court, and the Southeastern Life Insurance Company no longer has any interest in this suit. George H. Moffett and the Dime Savings Bank, of Charleston, S. C., were subsequently brought in as administrators d. b. n. of deceased.

The appellee Lucy C. Huiet in her answer avers that she has no knowledge as to the exact amount or present status of her husband's indebtedness, and further alleges:

"That this defendant is informed and believes that said indebtedness was in no way or manner incurred by any false or fraudulent representations of the said Caleb B. Huiet."

She further denies on information and belief—

"that at the time that the said indebtedness arose Caleb B. Huiet was seriously financially embarrassed, and further avers that to the best of her knowledge, information and belief, the said Caleb B. Huiet was at the time of the making of such indebtedness fully solvent; and she further denies that she at any time conspired or connived with the said Caleb B. Huiet, or any other person or persons whomsoever, to cause any diversion of the funds of the said Caleb B. Huiet as alleged in the bill of complaint."

It is further denied by the defendant that she had any knowledge of the alleged insolvency of her husband at the time of payment on account of premiums due on the insurance policies in question. Numerous other averments are contained in the answer, but we think that those we mention are sufficient for the purposes of this opinion.

The court below rendered a decree, dated December 23, 1916, in which it was adjudged that the creditors were entitled to the sum of $1,725.13, with interest from the average date of payment of premiums in the year 1914, and refused all other relief to the creditors. Subsequently, none of the creditors having filed a supersedeas, the impounded fund was paid over to Lucy C. Huiet, excepting the sum above mentioned awarded to the creditors. This cause comes here on appeal and cross-appeal.

It is insisted by appellant that the court below erred in not decreeing that it was entitled to all the proceeds of the insurance where the policies were payable to the wife of decedent; the first assignment being in the following language:

"That his honor, the District Judge, erred in failing to find as a matter of law that, when assets of an insolvent are diverted to the purchase of insurance in fraud of creditors, the proceeds of the policies so purchased should be applied to the payment of the debts of those creditors—not merely the amount diverted."

By this assignment it is assumed that the decedent purchased insurance out of his assets while insolvent. It appears from the evidence that the policies of insurance on the life of Caleb B. Huiet at the date of his death, and payable to his wife as beneficiary, with the exception of the policy for $25,000 in the New York Life Insurance Company, were taken out prior to the date of the insolvency of decedent, as found by the court below. It also appears that at the time this policy was taken out decedent, not being able to pay the premium in cash, deposited two bonds as collateral security in payment of the same, but that after the death of decedent the widow redeemed these bonds and turned them over as part of the assets of the decedent. We will pass upon the legal effect of this transaction later on.

[1] The second assignment, in our opinion, raises the real and most important question involved in this controversy. This assignment is in the following language:

"That his honor, the District Judge, erred in failing to find as a matter of law that section 2721 of volume 1 of the Code of Laws of South Carolina, 1912, when construed with section 3455 of the same volume, means to exempt from the claims of creditors of the two insured such amount of a policy or policies of insurance as is purchased with premiums to the amount of $500 per annum."

Section 3455 of the Code of Laws of South Carolina (1912) is as follows:

"Every feoffment, gift, grant, alienation, bargain, and conveyance of lands, tenements, or hereditaments, goods, and chattels, or of any of them, or of any lease, rent, commons, or other profit or charge out of the same, by writing or otherwise; and every bond, suit, judgment, and execution, which may be had or made, to or for any intent or purpose to delay, hinder, or defraud creditors and others of their just and lawful actions, suits, debts, accounts, damages, penalties, and forfeitures, shall be deemed and taken (only as against that person or persons, his or their heirs, successors, executors, administrators, and assigns, and every of them, whose actions, suits, debts, accounts, damages, penalties, and forfeitures, by such guileful, covinous or fraudulent devices and practices as is aforesaid, are, shall, or might be in any ways disturbed, hindered, delayed, or defrauded) to be clearly and utterly void, frustrate, and of none effect; any pretence, color, feigned consideration, expressing of use, or any other matter or thing to the contrary notwithstanding."

Also section 2721 is applicable, and should be considered together with the section which we have just quoted. It is as follows:

"A policy of insurance upon the life of any person which has already been or may hereafter be taken out in which it is expressed to be for the benefit of any married woman, or of herself and her children, or of herself and children of her husband, whether procured by herself or her husband, shall inure to the use and benefit of the person or persons for whose use and benefit it is expressed to be taken out; and the sum or net amount of the insurance becoming due and payable by the terms of the policy shall be payable to the person or persons aforesaid, free and discharged from the claims of the representatives of the husband, or of any of his creditors, or any party or parties claiming by, through or under him or them or either of them: Provided, however, that if the premium paid in any one year out of the property or funds of the husband shall exceed the sum of five hundred dollars, the exemption from the claims of the creditors of the husband shall not apply to so much of said premium so paid as shall be in excess of five hundred dollars, but such excess, with the interest thereon, or so much thereof as may be necessary, shall enure to the benefit of such creditors if the same be necessary for their payment."

Section 3455 is practically a re-enactment of the statute of Elizabeth, which was intended to prevent one, by donation or otherwise, from disposing of his property so as to avoid the payment of his debts. However, this section is limited, as we will see, to a certain extent, by the second section which we have quoted.

The statutes of South Carolina clearly indicate a purpose to guard, as much as possible, the rights of married women. A striking illustration of this is the statute which prevents one from obtaining a divorce after once being lawfully married. These statutes, as we have said, should be considered in pari materia, in order that we may ascertain the extent of the limitation contained in section 2721. It was obviously the purpose of the Legislature to go as far as possible in protecting the rights of creditors as against one who might become insolvent by purchasing insurance for the wife; but when these two statutes are considered together it is clear that the Legislature also intended to safeguard the rights of the wife. The Legislature no doubt considered it improper to permit a husband to divert all of his assets under the guise of providing for his wife. Hence the provision in the stat-

ute that any money invested in insurance, together with the interest thereon, in excess of the sum of $500, should be subject to the payment of a husband's debts; that if the premium of any one year out of his property or funds should exceed this amount that the exemption in favor of the creditors "shall not apply to so much of said premium so paid as shall be in excess of five hundred dollars, but such excess, with the interest thereon, or so much thereof as shall be necessary shall inure to the benefit of such creditors if the same be necessary for their payment." This was intended to limit the provisions of section 2721, which, as will be seen, provides that, where insurance is taken out in favor of the wife and children, "it shall inure to the use and benefit of the person or persons for whose benefit it was secured," and further provides that the net amount of the insurance thus obtained shall be "free and discharged from the claims of the representatives of the husband, or any of his creditors, or any party or parties claiming by, through or under him or them or either of them."

Under the provisions of this statute it would be absurd to say that one could not, by taking out insurance and paying for the same out of his own money or property, by this method provide a sum sufficient to protect his wife and children after his death. This principle was annunciated in the case of Central Bank of Washington v. Hume, 128 U. S. 195, 9 Sup. Ct. 41, 32 L. Ed. 370. That portion of the opinion pertinent to this question is in the following language:

"Mrs. Hume was confessedly a contracting party to the Maryland policy; and as to the Connecticut contracts the statute of the state where they were made and to be performed explicitly provided that a policy for the benefit of a married woman shall inure to her separate use or that of her children; but if the annual premium exceed three hundred dollars, the amount of such excess shall inure to the benefit of the creditors of the person having the premiums. The rights and benefits given by the laws of Connecticut in this regard are as much part of these contracts as if incorporated therein, not only because they are to be taken as if entered into there, but because there was the place of performance, and the stipulation of the parties was made with reference to the laws of that place. * * * The obvious distinction between the transfer of a policy taken out by a person upon his insurable interest in his own life, and payable to himself or his legal representatives, and the obtaining of a policy by a person upon the insurable interest of his wife and children, and payable to them, has been repeatedly recognized by the courts. Thus in Elliott's Appeal, 50 Pa. 75 [88 Am. Dec. 525], where the policies were issued in the name of the husband, and payable to himself or his personal representatives, and while he was insolvent were by him transferred to trustees for his wife's benefit, the Supreme Court of Pennsylvania, while holding such transfers void as against creditors, say: 'We are to be understood in thus deciding this case that we do not mean to extend it to policies effected without fraud directly and on their face for the benefit of the wife, and payable to her; such policies are not fraudulent as to creditors, and are not touched by this decision.' In the use of the words 'without fraud,' the court evidently means actual fraud participated in by all parties, and not fraud inferred from the mere fact of insolvency; and, at all events, in McCutcheon's Appeal, 99 Pa. 137, the court say, referring to Elliott's Appeal: 'The policies in that case were effected in the name of the husband, and by him transferred to a trustee for his wife at a time when he was totally insolvent. They were held to be valuable choses in action, the property of the assured, liable to the payment of his debts, and hence their voluntary assignment operated in fraud of creditors, and was void as against them under the statute of 13 Elizabeth. Here, however, the policy was effected in

the name of the wife, and in point of fact was given under an agreement for the surrender of a previous policy for the same amount also issued in the wife's name. * * * The question of good faith or fraud only arises in the latter case; that is, when the title of the beneficiary arises by assignment. When it exists by force of an original issue in the name, or for the benefit of the beneficiary, the title is good, notwithstanding the claims of creditors. * * * There is no anomaly in this, nor any conflict with the letter or spirit of the statute of Elizabeth, because in such cases the policy would be at no time the property of the assured; and hence no question of fraud in its transfer could arise as to his creditors. It is only in the case of the assignment of a policy that once belonged to the assured that the question of fraud can arise under this act.' And see Ætna Nat. Bank v. U. S. Life Ins. Co. [C. C.] 24 Fed. 770; Pence v. Makepeace, 65 Ind. 345; Succession v. Hearing, 26 La. Ann. 326; Stigler v. Stigler, 77 Va. 163; Thompson v. Cundiff, 11 Bush [Ky.] 567.

"Conceding, then, in the case in hand, that Hume paid the premiums out of his own money, when insolvent, yet, as Mrs. Hume and the children survived him, and the contracts covered their insurable interest, it is difficult to see upon what ground the creditors, or the administrators as representing them, can take away from these dependent ones that which was expressly secured to them in the event of the death of their natural supporter. The interest insured was neither the debtor's nor his creditors'. The contracts were not payable to the debtor, or his representatives, or his creditors. No fraud on the part of the wife, or the children, or the insurance company, is pretended. In no sense was there any gift or transfer of the debtor's property, unless the amounts paid as premiums are to be held to constitute such gift or transfer. This seems to have been the view of the court below, for the decree awarded to the complainants the premiums paid to the Virginia Company from 1874 to 1881, inclusive, and to the other companies from the date of the respective policies, amounting, with interest to January 4, 1883, to the sum of $2,696.10, which sum was directed to be paid to Hume's administrators out of the money which had been paid into court by the Maryland and Connecticut Mutual Companies. But, even though Hume paid this money out of his own funds when insolvent, and if such payment were within the statute of Elizabeth, this would not give the creditors any interest in the proceeds of the policies, which belonged to the beneficiaries for the reasons already stated. * * * If in some cases payments of premiums might be treated as gifts inhibited by the statute of Elizabeth, can they be so treated here?

"It is assumed by the complainants that the money paid was derived from Hume himself, and it is therefore argued that to that extent his means for payment of debts were impaired. That the payments contributed in any appreciable way to Hume's insolvency, is not contended. So far as premiums were paid in 1880 and 1881 (the payments prior to those years having been the annual sum of $196.18 on the Virginia policy), we are satisfied from the evidence that Hume received from Mrs. Pickrell, his wife's mother, for the benefit of Mrs. Hume and her family, an amount of money largely in excess of these payments, after deducting what was returned to Mrs. Pickrell, and that in paying the premiums upon procuring the policies in the Maryland and the Connecticut Mutual, Hume was appropriating to that purpose a part of the money which he considered being thus held in trust; and we think that, as between Hume's creditors and Mrs. Hume, the money placed in Hume's hands for his wife's benefit is, under the evidence, equitable as much to be accounted for to her by Hume, and so by them, as is the money paid on her account to be accounted for by her to him or them. * * * This argument in the interest of creditors concedes that the debtor may rightfully preserve his family from suffering and want. It seems to us that the same public policy which justifies this, and recognizes the support of wife and children as a positive obligation in law as well as morals, should be extended to protect them from destitution after the debtor's death, by permitting him, not to accumulate a fund as a permanent provision, but to devote a moderate portion of his earnings to keep on foot a security for support already, or

which could thereby be, lawfully obtained—at least to the extent of requiring that, under such circumstances, the fraudulent intent of both parties to the transaction should be made out. And inasmuch as there is no evidence from which such intent on the part of Mrs. Hume or the insurance companies could be inferred, in our judgment none of these premiums can be recovered.

"The decree is affirmed, except so far as it directs the payment to the administrators of the premiums in question and interest, and, as to that, is reversed, and the cause remanded to the court below, with directions to proceed in conformity with this opinion."

Also we find the following on page 3794 of volume 4, Cooley's Briefs on Law of Insurance:

"The question as to the effect of the insolvency of insured upon the distribution of the proceeds of a policy payable to insured's family has been treated by the courts as governed by the principles determining the effect of fraudulent conveyances, rather than by any part of the insurance law. There are, however, numerous cases treating the effect of statutes providing for an exemption of the proceeds of life policies from the claims of creditors, which may be properly considered here. And it may not be out of place to state the general rule that in the absence of a special statute the insolvency of insured will give the creditors no claim upon the proceeds of a policy procured without the expenditure of any money by insured during insolvency (First. Nat. Bank v. Simpson, 152 Mo. 638, 54 S. W. 506), and that, though some of the premiums may have been paid during insolvency, this will not necessarily subject the proceeds of the policy to the payment of insured's debts, even to the extent of the premiums so paid (Central Nat. Bank v. Hume, 128 U. S. 195, 9 Sup. Ct. 41, 32 L. Ed. 370; contra Fearn v. Ward, 80 Ala. 555, 2 South. 114). All the statutes bearing on the exemption of life policies or their proceeds seem based on the theory that, in the absence of an expressed contrary intent, the object of an ordinary life insurance policy should be considered as the protection of insured's family after his death, and that this object and desire is laudable and in accordance with public policy. They provide, in substance, that the proceeds of life insurance policies taken out for the benefit of certain classes of beneficiaries shall be free from the claims of creditors; but in some states insurance in excess of certain specified amounts, or procured while the insured was insolvent, is declared not exempt."

The court below held, as we have stated, that creditors were only entitled to the premiums paid in any one year in excess of the sum of $500, and interest thereon, after the date deceased became insolvent, and while, technically speaking, appellants by assignment of error do not raise the question as to whether any premiums paid in excess of $500 at any time prior thereto, when deceased was solvent, should be treated as subject to the payment of the debts of deceased, however, to interpret this statute, in view of the facts set forth in the record, we feel called upon to pass upon that question also.

In enacting this statute the Legislature no doubt carefully considered the whole situation, with a view of adopting a plan by which it could prevent the husband from diverting more than $500 of his assets for the purpose of purchasing insurance for his wife by providing that after that amount had been purchased any additional money used for that purpose should be treated as a conversion of his assets, so that if he should become insolvent the creditors would be entitled to any such amount, together with interest on the same. This, we think, is a fair and equitable provision.

It is urged that, where one is solvent, during such time as he remains solvent he may dispose of his property as he sees fit. Ordinarily this is true, but the Legislature of South Carolina evidently intended by the enactment of this statute to provide against the contingency of insolvency in the interest of the creditors of the husband, and therefore, without mentioning insolvency or without fixing any particular time for the limitations contained in the statute to become effective, simply provided that only $500 of his assets should be exempt, so that in the event he should become insolvent that portion of his assets which he invested in excess of $500 in purchasing insurance should become subject to the payment of his creditors at his death.

It is also contended that the construction which we feel impelled to place upon this statute, in many instances, would work a great hardship upon the wife; that where one pays premiums on a policy for 20 years or more that such premium would, in the aggregate, absorb the face value of the policy at the death of the insured. In this connection it should be borne in mind that the whole amount of insurance purchased in any one year by the payment of premiums amounting to $500 belongs exclusively to the wife at the death of the husband. It is a matter of common knowledge that one may purchase as much as $8,000 or $9,000 of insurance by the payment of $500, and the probabilities are that in the majority of instances policies would not run for more than 10 or 15 years; but, even if they should, such fact would not justify us in reading into the statute a proviso which was not placed there by the Legislature for the purpose of avoiding a contingency which might arise under the statute.

By this legislation the wife is entitled, as against creditors, to the premium up to the amount of $500 and the face value of the policy. It is perfectly clear that any insurance that the husband might be able to purchase by paying premiums to the extent of $500 for any one year belongs exclusively to the wife, and is therefore not subject to the payment of any debts that the husband may have contracted; and we think this is true, even if the husband should be insolvent at the time that he takes out the insurance policy, inasmuch as the word "insolvency" is not contained in section 2721, which excludes the idea that it was the purpose of the Legislature to prevent the wife from enjoying the benefits accruing under the policy, subject to the limitations which we have already mentioned. It is clear, we think, that where policies are taken out in addition thereto that the wife is entitled to any and all insurance accruing thereunder, save the premiums and interest thereon, as we have stated. In other words, this statute clearly indicates a purpose on the part of the Legislature to permit the husband to purchase any amount of insurance, but to limit the amount of insurance that the wife would be entitled to at his death to such balance as might remain after deducting therefrom the premiums and interest thereon.

Decisions in other states where statutes somewhat similar to this are in force support this conclusion. The statute of South Carolina and that of New York bearing upon this question are identical as to the point involved herein, the statute of New York being in the following language:

"When the premium paid in any year out of the property or funds of the husband shall exceed $500, such exemption from such claims shall not apply to so much of the said premium so paid as shall be in excess of $500, but such excess * * * shall inure to the benefit of his creditors." Laws N. Y. 1870, c. 277.

The above statute was amended by the Legislature of New York in 1896, the following language being employed:

When the premium paid in any year out of the $500, and such excess shall inure to the benefit of insurance purchased by premiums in excess of $500 primarily liable for the husband's debts. Laws 1896, c. 272.

In referring to the statute before it was amended, in the case of Kittel v. Domeyer, 70 App. Div. 134, 75 N. Y. Supp. 150, the court said:

" * * * Only so much of the premium paid as was in excess of $500 should inure to the benefit of creditors; that is, not one, but all, of the creditors of the deceased husband, and such excess was evidently intended to be administered as part of his estate and in that way distributed pro rata among all the creditors according to their respective claims."

The court in that case, in construing the statute as amended, also said:

"The principal and substantially the only change which seems to have been made by the act of 1896 was that the excess of premium was not the fund which was to inure to the benefit of creditors, but that the insurance purchased by premiums in excess of $500 should be 'primarily' liable for the husband's debts, and should be no longer free from the claims of creditors and representatives of the husband."

In view of the amendment to the New York statute on this subject, wherein it is expressly declared that the insurance purchased by premiums in excess of $500 should be liable for the husband's debt, and the decision of the appellate court of that state as to the meaning of the original statute and the amendment thereto, it is easy to distinguish the case which we have just quoted from the case at bar, and when we consider the fact that the South Carolina Code was fashioned after the New York Code, and its provision in respect to this matter being in practically the same language, leaves little doubt, if any, as to the construction to be placed upon the South Carolina statute.

[2] It is expressly denied by Mrs. Huiet that she had any knowledge of the alleged fraudulent transactions of her husband, or that she entered into any conspiracy with him to defraud his creditors, and there is not a scintilla of evidence to contradict this averment. However, it is insisted by plaintiff that the decedent by false and fraudulent representations secured the money from appellant with which to purchase the insurance in question. The court below found as a fact, as we have already stated, that all the premiums paid for insurance by the husband, with one exception, were paid anterior to the time that he became insolvent, and we think the evidence amply justifies this finding. However, we fail to see how any fraudulent and false representations the decedent may have made to appellant to obtain money could affect the right of the wife to enjoy the benefit of the exemptions to which she was entitled under a legislative grant.

[3] The fifth assignment of error is in the following language:

"That his honor, the District Judge, erred in failing to find as a matter of law that when the Franklin Sugar Refining Company became willing to surrender the policies of life insurance in the Southeastern Life Insurance Company for $60,000, the act of C. B. Huiet in having these policies assigned to his wife rather than to his creditors (Huiet at that time having power of appointment over the policies), was a diversion of assets in fraud of his creditors."

It is also insisted that at the time this assignment was made, even though the wife before such assignment would have been entitled to receive the benefits thereunder at the death of her husband, that the assignment of the wife to the Franklin Sugar Refining Company as a creditor would have changed the contract of insurance so as to terminate any interest that she might have had therein, and, further, that the reassignment by the creditor of these policies in favor of the wife constituted a fraudulent conveyance on the part of Huiet.

It would be unreasonable to hold that a wife who had an interest in life insurance policies, as in this instance, by making an assignment to aid her husband temporarily to bridge over his financial troubles, thereby relinquished any right or title which she may have had to the insurance accruing thereunder, and it would be manifestly unjust under such circumstances to hold that any reassignment made by the creditor, so as to reinvest the wife with her interest therein, was a fraudulent transaction as respects the other creditors of the husband. We think that this is so plain that it is not necessary to cite many authorities in support thereof. In passing, however, we will cite the case of Palmer v. Mutual Life Ins. Co., 38 Misc. Rep. 318, 77 N. Y. Supp. 869; also the case of McNevins v. Prudential Ins. Co. of America, 57 Misc. Rep. 608, 108 N. Y. Supp. 745, wherein the Supreme Court held that the cancellation of the debt of necessity extinguished the creditors' interest, which, at most, was only conditional, and that by cancellation of the debt and the reassignment of the policy the beneficiary becomes reinvested with the title to the same, and occupies precisely the same position that she occupied at the time the policies were taken out in her favor. It follows that the court below was not in error as respects its ruling on this point.

[4] The court below held that, inasmuch as Mrs. Caleb B. Huiet redeemed the bonds which had been placed as collateral by her husband, as found by the court below, and returned these bonds to the estate, thereby increasing the assets of the deceased to that extent, that in equity she would be entitled to such premium as was paid thereon. We think that in view of the facts this ruling was eminently proper. We have carefully examined the numerous cases cited by appellant, but are of opinion that they do not apply to this question; the facts being easily distinguished from those of the case at bar.

Having disposed of the material assignments, from what we have said as respects the various contentions of the parties, it follows that the court below, in decreeing that the creditors were only entitled to recover premiums paid in excess of $500 for any one year from the date of the insolvency of the decedent, was in error. Therefore the decree of the lower court should be modified, so as to entitle the cred-

itors to recover all the premiums paid in any one year, except $500 and interest thereon.

It follows, therefore, that the decree of the court below, to this extent, must be modified and affirmed.

KNAPP, Circuit Judge (dissenting in part). I cannot agree to a construction of the South Carolina statute which takes from the wife and gives to the husband's creditors the excess over $500 of premiums paid by him "in any one year" when he was perfectly solvent. A single illustration will serve the purpose of argument. It is not uncommon to take out a "paid-up" life policy; that is, a policy for which a lump sum is paid at the time it is issued, in lieu of annual or other stated payments. At the age of 25, a husband insures his life for such amount, payable to his wife at his death, as $10,000 then paid will purchase. He is solvent at the time, and continues solvent for 40 years, when some misfortune overtakes him, and he dies heavily indebted, leaving little or no property. In such a case, if the majority are right, the husband's creditors, whose claims may not have accrued until within a year before his death, can take from the insurance money, as against the wife, the sum of $9,500, with interest thereon for 40 years, which might aggregate enough to exhaust the policy. It seems clear to me that the language of this statute does not require and should not receive a construction under which such a palpably unjust result is possible. I am of opinion that the creditors referred to in the proviso, the meaning of which is in dispute, are creditors whose rights are adversely affected by payments of premiums because of the insolvency of the debtor when such payments were made, or because the payments themselves contributed to his insolvency. True, the statute makes no mention of insolvency; but that would appear to be implied, since it has no application except to an insolvent condition. When that condition exists, the proviso comes in to limit the annual amount that may be paid for insurance, and I cannot believe that the Legislature ever intended to give to "such creditors" any right to premiums previously paid, when the insured was entirely solvent, although such premiums were more than $500 a year.

As I read it, the Domeyer Case cited in the majority opinion, is not in point. The report of that case (70 App. Div. 134, 75 N. Y. Supp. 150) states that the judgment of the trial court was sought to be sustained "upon the theory that, inasmuch as Domeyer for several years prior to his death was insolvent, and *during that time* (italics mine) the premiums on all of the policies referred to exceeded $500 a year, and such premiums were paid out of his own property, the plaintiff as a creditor is entitled to recover," etc. Apparently, therefore, the court was dealing with a case where the excess premiums were all paid after the insured became insolvent, and the question here considered was not involved.

I think the decree below was right, and should be affirmed without modification.